IN THE SUPREME COURT OF NORTH CAROLINA

No. 8PA14

FILED 25 SEPTEMBER 2015

HIGH POINT BANK AND TRUST COMPANY

v.

HIGHMARK PROPERTIES, LLC, MITCHELL BLEVINS, CYNTHIA BLEVINS, CHARLES WILLIAMS, and JANICE WILLIAMS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 750 S.E.2d 886 (2013), finding no error in orders entered on 19 September 2011 and 4 October 2011 by Judge Ronald E. Spivey and a judgment entered on 11 July 2012 by Judge Stuart Albright, in Superior Court, Guilford County. On 6 March 2014, the Supreme Court allowed defendants' conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 17 November 2014.

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell, Christopher C. Finan, and Matthew A.L. Anderson, for plaintiff-appellant/appellee.*

*Jenkins Law Group PLLC, by Ellis B. Drew, III and Ann G. Sugg, for defendant-appellees/appellants.*

*Goldsmith, Goldsmith & Dews, P.A., by Frank Goldsmith; and Martin & Jones, PLLC, by G. Christopher Olson, for North Carolina Advocates for Justice, amicus curiae.*

JACKSON, Justice.

In this case we consider whether non-mortgagor guarantors of a loan may raise the anti-deficiency defense set forth in section 45-21.36 of the North Carolina General Statutes in order to reduce their outstanding indebtedness to the primary borrower's lender. In addition, we consider whether the primary borrower properly was joined in the action. We hold that joinder was proper and that, irrespective of the primary borrower's presence in the litigation, guarantors may assert the anti-deficiency defense.

Defendant Highmark Properties, LLC (Highmark) is a North Carolina limited liability company involved in real estate development. Defendants Mitchell and Cynthia Blevins and Charles and Janice Williams (guarantors) are the members of the LLC.

Plaintiff issued two loans to Highmark: one in January 2007 for $4,700,000 (the First Note) and the other in May 2007 for $1,750,000 (the Second Note). In addition to promissory notes executed by Highmark, the loans were guaranteed by guarantors and were secured by deeds of trust on two parcels of real property owned by Highmark in Forsyth County. Each guarantor executed "Commercial Guaranty" forms supplied by the Bank on 18 January 2007 and on 2 May 2007.

Subsequently, Highmark defaulted, leaving an indebtedness of $3,541,356 on the First Note and $1,336,556 on the Second Note as of 8 February 2011. On 19 October 2010, plaintiff filed a complaint in Superior Court, Guilford County, seeking

a judgment against Highmark and the guarantors, both jointly and severally, for the outstanding indebtedness. Plaintiff then exercised the power of sale pursuant to its deeds of trust and sold the two properties at a foreclosure proceeding. Plaintiff was the sole bidder on both properties, paying $2,578,070 for one property and $720,000 for the other property.

In July 2011, plaintiff filed a motion for summary judgment. Three weeks later, plaintiff voluntarily dismissed without prejudice all claims against Highmark. Shortly thereafter, guarantors filed a motion to join Highmark as a defendant in the action pursuant to section 26-12 of the General Statutes and Rules 19 and 20 of the North Carolina Rules of Civil Procedure. Guarantors also sought leave to file a third-party complaint against Highmark for indemnity and contribution.

Plaintiff filed a motion *in limine* arguing, *inter alia*, that guarantors intended to raise an anti-deficiency defense and that this defense is not available to non-mortgagor guarantors of payment. On 19 September 2011, the trial court entered an order ruling that joinder of Highmark was "appropriate under N.C.G.S. § 26-12," and that, pursuant to the North Carolina Rules of Civil Procedure, Highmark was a necessary party pursuant to Rule 19, or a permissive party pursuant to Rule 20, and therefore "should be joined." The trial court found that Highmark "is a going concern; is not in bankruptcy; is not dissolved; and is subject to the jurisdiction of this Court." The court further noted that Highmark previously was a party until 18 August 2011,

when plaintiff dismissed Highmark without prejudice. The trial court denied guarantors' motion to file a third-party complaint against Highmark.

In an order dated 4 October 2011, the trial court entered summary judgment against guarantors "on the issue of [their] liability for payment of the deficiency under the Notes." The order stated that "[t]he value of the property securing payment of the Notes and its effect, if any, on the deficiency owed are the sole unresolved issues remaining for trial." Highmark and guarantors all sought to amend their answers to assert the anti-deficiency defense, which the trial court allowed.

The parties stipulated to the following relevant facts by pretrial order: (1) "[A]ll parties have been correctly designated, and there is no question as to misjoinder"; (2) "The total deficiency on the First Note following the foreclosure sale . . . was . . . $963,286"; (3) "The total deficiency on the Second Note following the foreclosure sale . . . was . . . $616,556"; (4) "The single remaining issue for trial is the Defendants' affirmative defense under N.C. Gen. Stat. § 45-21.36"; and (5) Determination of this issue requires the court to find whether the amounts paid by plaintiff at the foreclosure sales for the two parcels of land were "substantially less than [the] true value" of the properties.

The case was tried in Superior Court, Guilford County, beginning in September 2011. On 20 April 2012, the jury found that the amounts paid by plaintiff for the parcels of real property at foreclosure were substantially less than the fair market

values of the parcels on the date of sale. The jury determined the fair market value of the first parcel as $3,723,000 and that of the second parcel as $1,034,000. Accordingly, the trial court ruled that Highmark's indebtedness on the First Note was reduced to $0.00, because the jury had determined that the fair market value of the first parcel was greater than Highmark's remaining debt of $3,541,356. Next, the trial court ruled that Highmark's indebtedness on the Second Note was reduced to $302,556—the difference between the jury's determination of the fair market value of the second parcel and Highmark's remaining debt of $1,336,556. The trial court ruled that Highmark and guarantors were jointly and severally liable and ordered payment to plaintiff in the amount of $302,556 for the remaining uncollected debt, plus attorney's fees and interest. Plaintiff appealed.

The Court of Appeals affirmed the trial court's rulings on 3 December 2013. *High Point Bank & Tr. v. Highmark Props., LLC*, ___ N.C. App. ___, 750 S.E.2d 886 (2013). The panel was unanimous in concluding that the trial court did not abuse its discretion in joining Highmark to the action and that the reduction in guarantors' liability pursuant to section 45-21.36 was proper. *Id.* at ___, 750 S.E.2d at 891. But the majority and concurrence differed as to whether the statute provided incidental or direct relief to guarantors. The majority determined that once Highmark was joined as a party, guarantors were entitled to benefit from Highmark's use of section 45-21.36. *Id.* at ___, 750 S.E.2d at 890-91. The concurring judge reached the same result as the majority by concluding that guarantors could assert the anti-deficiency

defense provided by section 45-21.36 even if Highmark was not a party. *Id*. at ___, 750 S.E.2d at 892 (Dillon, J., concurring in the result only in part). We allowed plaintiff's Petition for Discretionary Review and defendants' Conditional Petition for Discretionary Review.

This matter presents a question of statutory interpretation, which we review de novo. *In re Foreclosure of Vogler Realty, Inc.*, 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012) (citation omitted). "When applying de novo review, we 'consider[ ] the case anew and may freely substitute' our own ruling for the lower court's decision." *Lanvale Props., LLC v. Cnty. of Cabarrus*, 366 N.C. 142, 149, 731 S.E.2d 800, 806-07 (2012) (alteration in original) (quoting *Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjust.*, 365 N.C. 152, 156, 712 S.E.2d 868, 871 (2011)).

Plaintiff first argues that a guarantor is not among the class of obligors eligible to claim the benefit of section 45-21.36 because the statute applies only to a "mortgagor, trustor, or other maker of any such obligation whose property has been so purchased." Next, plaintiff contends that even if a guarantor is among those eligible to utilize the statute, according to the express language contained in the guaranty here, the guarantors have waived their right to the statutory defense. We disagree with both assertions. This Court previously has addressed the essence of these arguments. We held a guarantor is within the group of those who enjoy the protection of section 45-21.36. *See Wachovia Realty Invs. v. Housing, Inc.*, 292 N.C.

93, 112, 232 S.E.2d 667, 679 (1977) ("The statute provides only that when the creditor has elected to become the purchaser of the property conveyed by the mortgage or deed of trust at a sale made under a power of sale . . . he shall not recover judgment against his debtor for any deficiency, after the application of the amount of his bid as a payment on the debt, without first accounting to his debtor for the fair value of the property at the time and place of the sale, and that such value shall be determined by the court.") (quoting *Richmond Mortg. & Loan Corp. v. Wachovia Bank & Tr. Co.* (*Richmond Mortgage*), 210 N.C. 29, 185 S.E. 482 (1936), *aff'd*, 300 U.S. 124, 57 S. Ct. 338, 81 L. Ed. 552 (1937)). The effect is that the section establishes an equitable method of calculating the indebtedness; therefore, it is not a "defense" in the usual sense which can be waived.

A guaranty, as it operates here, is a promise to repay the "indebtedness." Section 45-21.36 simply provides the method of calculating that amount as follows:

> When any sale of real estate has been made by a mortgagee, trustee, or other person authorized to make the same, at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title . . . and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation whose property has been so purchased, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as a matter of defense and offset, but not by way of counterclaim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its

true value, and, upon such showing, to defeat or offset any
deficiency judgment against him[.]

N.C.G.S. § 45-21.36 (2013).  The statute currently codified as section 45-21.36 was

part of Chapter 275 of the 1933 Session Laws, a group of depression era laws designed

to protect debtors.  As such, our Court has stated, "we are compelled to construe [such

a] statute more broadly" to ensure the legislative purposes are fulfilled.  *Ross Realty

Co. v. First Citizens Bank & Tr. Co.*, 296 N.C. 366, 250 S.E.2d 271 (1979).[1]

In *Virginia Trust Co. v. Dunlop*, 214 N.C. 196, 198 S.E. 645 (1938), we

addressed an anti-deficiency statute that contained language nearly identical to the

present-day section 45-21.36.  In *Dunlop* a creditor made a loan secured by real estate

and guaranteed by agreement with a guarantor.  *Id.* at 196, 198 S.E. at 645.  The

borrower defaulted, and the creditor foreclosed on the collateral, but the net proceeds

of the foreclosure sale failed to satisfy the debt fully.  *Id.* at 197, 198 S.E. at 645.  The

---

[1] In *Ross Realty*, we explained that we found particularly helpful a 1960 *Duke Law Journal* discussion on the history of anti-deficiency legislation, noting the relevant portion:

> The year 1933 was one of deep depression, and North Carolina, along with other states, was concerned with the economic distress associated with wholesale mortgage foreclosures.  The act . . . chapter thirty-six  of the Laws of 1933 — was the first in a series of legislative attempts at the same session to deal with the mortgage problem. . . .

*Id.* at 370-71, 250 S.E.2d at 273-74 (quoting Brainerd Currie & Mark S. Lieberman, *Purchase-Money Mortgages and State Lines: A Study in Conflict-of-Laws Method*, 1 Duke L.J. 1, 11 (1960) (footnotes omitted)).  We also observed that the authors of the article "concluded . . . that the 1933 General Assembly intended to protect vendees from oppression by vendors and mortgagors from oppression by mortgagees."  *Id.* at 371, 250 S.E.2d at 274.

high bidder at the foreclosure sale was a subsidiary of the creditor. *Id.* at 197, 198 S.E. at 645-46.

The guarantor died, and the creditor sued the guarantor's estate, but did not sue the borrower. *Id.* at 196-97, 198 S.E. at 645. The estate raised the anti-deficiency defense currently found in section 45-21.36, and the creditor moved to strike the defense, arguing that it was not available because the estate was not a "mortgagor, trustor, or other maker of any such obligation whose property has been so purchased (at foreclosure)," as required by the anti-deficiency statute. *Id.* at 197-98, 198 S.E. at 645. We determined that

> a proper construction of the statute should regard the act of a mortgagee, or trustee, or holder of the notes secured by the mortgage, in acquiring the mortgaged premises at a foreclosure sale had at its instigation and for its benefit, as an act going to the discharge of the instrument and giving the guarantor the benefit of this defense . . . . It would not be an unreasonable interpretation of the statute to hold that it proceeds upon the equitable assumption that the debtor [sic] has received payment in full when, by his own choice, he takes the land, and that the purpose of the law is, under such circumstances, to discharge the debt.

*Id.* at 198, 198 S.E. at 646. Consequently, we concluded that the guarantor, and thus the estate, had the right to utilize the statutory protection at trial. *Id.* at 198-99, 198 S.E. at 646.

Our holding in *Dunlop* is further illustrated by our prior decision in *Richmond Mortgage.* There, the debtor raised the statutory defense, and the creditor argued

the statute was unconstitutional because it impaired the power to contract. Our

Court held the statute constitutional and stated that its purpose was to protect a

debtor from a creditor unilaterally determining the amount to be applied to a debt

resulting from the trustee's sale of collateral. We stated:

> The statute recognizes the validity of powers of sale
> contained in mortgages or deeds of trust, but regulates the
> exercise of such powers by the application of well settled
> principles of equity. It does not impair the obligation of
> contracts, but provides for judicial supervision of sales
> made and conducted by creditors whose debts are secured
> by mortgages or deeds of trust, and thereby provides
> protection for debtors whose property has been sold and
> purchased by their creditors for a sum which was not a fair
> value of the property at the time of sale.

*Richmond Mortgage*, 210 N.C. at 34-35, 185 S.E. at 485. In sum, the statute protects

a debtor by calculating the debt based upon the fair market value of the collateral

instead of the amount bid by the creditor at the trustee's sale. A creditor

> shall not recover judgment against his debtor for any
> deficiency, after the application of the amount of his bid as
> a payment on the debt, without first accounting to his
> debtor for the fair value of the property at the time and
> place of the sale, and that such value shall be determined
> by the court. In such case, the amount bid by the creditor
> at the sale, and applied by him as a payment on the debt,
> is not conclusive as to the value of the property.

*Id*. Thus, the statute is an equitable method of calculating the indebtedness, and as

such is not subject to waiver.

Our holdings in *Dunlop* and *Richmond Mortgage* are controlling here. Just as

a guarantor may raise this defense, he similarly is entitled to its benefits should it be

determined that the property's fair market value exceeded the purchase price paid by the creditor at the trustee's foreclosure sale. In the instant case, plaintiff opted to satisfy Highmark's debt backed by guarantors by first exercising the power of sale pursuant to the deed of trust. As such, guarantors had the right to have the court determine the outstanding indebtedness by application of the fair market value of the collateral at the time of sale. Accordingly, we re-affirm our prior holdings that a guarantor is protected by the provision of section 45-21.36 that provides for a judicial method of determining the indebtedness. As the guarantors only guaranteed the repayment of the indebtedness, the amount of the indebtedness is calculated pursuant to the statute. Accordingly, it is not the type of "defense or offset" which is subject to waiver.

In contrast, we held in *RL REGI N.C., LLC v. Lighthouse Cove, LLC*, 367 N.C. 425, 426-27, 762 S.E.2d 188-89 (2014) that a group of guarantors waived prospective claims and defenses to a guaranty in a subsequent forbearance agreement, including claims arising from the lender's alleged violation of the Equal Credit Opportunity Act that potentially served as affirmative defenses to the agreement. The defense at issue there was in the form of a claim against the lender for a statutory violation, whereas here section 45-21.36 simply allows guarantors the right to a judicial method of debt calculation that accounts for the fair market value of the property at the time of a foreclosure sale. Accordingly, notwithstanding the waiver language contained in the

guaranty agreements, guarantors did not waive their right to the protection of section 45-21.36.

We have stated that "[a] person sui juris may waive practically any right he has unless forbidden by law or public policy." *Clement v. Clement*, 230 N.C. 636, 639, 55 S.E.2d 459, 461 (1949). While we have determined that section 45-21.36 is an equitable method of debt calculation as opposed to a traditional defense that is subject to waiver, we further conclude that because anti-deficiency legislation is so narrowly tailored to address specific instances of the public's vulnerability to lender overreach, waiver of this statutory protection as a prerequisite to receipt of a mortgage or as a condition of a guaranty agreement would violate public policy. Plaintiff's argument is without merit.

Finally, plaintiff argues that joinder of Highmark was improper because section 26-12 did not apply to guarantors in this case. We review the trial court's order joining Highmark as a party to the action for abuse of discretion. *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968) (citation omitted).

Upon a plain review of section 26-12, we conclude, as did the Court of Appeals, that the law allows permissive or discretionary joinder. Section 26-12 states that "[w]hen any surety is sued by the holder of the obligation, *the court, on motion of the surety may join the principal* as an additional party defendant." N.C.G.S. § 26-12(b) (2013) (emphasis added). A " 'surety' " includes guarantors." *Id*. § 26-12(a) (2013).

Plaintiff's argument that the standard of review for discretionary joinder should shift based upon a party's future course of action as a result of the joinder is unpersuasive, because section 26-12 allows joinder for the explicit purpose of giving the surety access to all defenses available to the primary borrower. As such, we hold that guarantors were permitted to move for joinder and the trial court committed no abuse of discretion by joining Highmark to this action.

In sum, we hold: (1) Guarantors are permitted to stand in the shoes of the principal borrower and thus raise the section 45-21.36 anti-deficiency defense in their own right; (2) Guarantors did not waive the protection offered by section 45-21.36 despite certain provisions in the guaranty agreements they executed; and (3) Highmark properly was joined as a defendant in this action pursuant to N.C.G.S. § 26-12. Accordingly, except as modified herein, the opinion of the Court of Appeals is affirmed.

MODIFIED AND AFFIRMED.

Justice ERVIN did not participate in the consideration or decision of this case.